IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORDAN DEAN WENHOLD,  :  Plaintiff,  : | |
| : | |
| v.  : | CIVIL ACTION NO. 23-CV-1513 |
| : | |
| LT. BROOKE LYNN ALBERT  : LOANE GAGLIONE, *et al.*  :  Defendants.  : | |

### MEMORANDUM

**SCHMEHL, J.  /s/ JLS**                                                                                       **OCTOBER 30, 2023**

Plaintiff Jordan Dean Wenhold, a pretrial detainee incarcerated at Northampton County Prison ("NCP"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Wenhold has also filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4) and Prisoner Trust Fund Account Statement (ECF No. 5). Because it appears that Wenhold cannot afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Court will dismiss his Complaint in part with prejudice and in part without prejudice. Wenhold will be given an opportunity to cure the noted deficiencies of certain claims by filing an amended complaint.

I.      **FACTUAL ALLEGATIONS**[1]

Wenhold names as Defendants:  (1) Lt. Brooke Lynne Albert Loane Gaglione;[2] (2) Detective Richard G. Heffelfinger, and (3) Detective Regan.  (Compl. (ECF No. 1) at 1, 6.)[3]  The Defendants are sued in their individual and official capacities.  (*Id.* at 1.)

Wenhold avers that he was arrested on February 16, 2023 by the Upper Saucon Police Department and taken to Lehigh County Jail ("LCJ").  (*Id.* at 1.)  When Wenhold arrived at the jail, he was met by Detectives Heffelfinger and Regan.  (*Id.*)  Detective Heffelfinger introduced himself to Wenhold and told him that every time Wenhold contacts Lt. Brooke, Heffelfinger would file charges against him.[4]  (*Id.* at 2.)  Wenhold contends that while "Heffelfinger was threatening [him]," Detective Regan went through his personal property without consent and without a warrant.  (*Id.* at 3-4.)  Wenhold felt threatened by Detective Heffelfinger because Heffelfinger "has been denying [Wenhold] his constitutional rights to due process" for years.  (*Id.* at 3.)

---

[1] The factual allegations are taken from Wenhold's Complaint and publicly available records of which this Court takes judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

[2] Although the Clerk of Court initially identified Lt. Brooke Lynn and Albert Loane Gaglione as separate Defendants, based on the Court's review of the Complaint and prior cases identified by Wenhold, the Court understands that these separately listed Defendants actually comprise one Defendant, Lt. Brooke Lynn Albert Loane Gaglione.  (Compl. at 6.)  Moreover, it does not appear that Wenhold intended to sue "The District Attorney's Office" as a separate entity.  To the contrary, it appears that Lehigh County Jail and the District Attorney's Office were added to the caption of the Complaint as further descriptors as to where Defendants are employed.

[3] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

[4] It appears from the Complaint that another officer suggested a Protection from Abuse Order ("PFA"), but Detective Heffelfinger decided to file charges instead.  (Compl. at 2-3.)

Wenhold was placed in a holding cell at LCJ while he waited for his arraignment before Magisterial District Judge Karen C. Devine. (*Id.* at 4.) Judge Devine set his bail at $100,000 and told him that his bail was high "because the District Attorneys want it high." (*Id.*) Wenhold was placed back in the holding cell for a short period of time before "an army of [Lieutenants] and [Sergeants]" from LCJ gave him orders to kneel and place his hands against the wall. (*Id.* at 5-6.) Wenhold was told by Sergeant Kowal that he was being transferred to another jail because Wenhold had charges pending against one of Kowal's officers. (*Id.* at 6.) Wenhold asserts, however, that the "last time [he] had charges against Lt. Brooke, he got to stay at (LCJ) and DID NOT HAVE TO TRANSFER!" (*Id.*) (emphasis in original). LCJ staff threatened to "O.C. spray" Wenhold, so Wenhold complied with the orders and was placed in a LCJ vehicle for transfer. (*Id.* at 7.)

During transfer to the Northampton County Prison, Wenhold was placed in the "back of a small vehicle" that allegedly caused him pain because of his size. (*Id.*) Wenhold "freaked-out" and was "ban[g]ing his head on the glass of the divider." (*Id.* at 7-8.) Wenhold avers that "LCJ staff did nothing to get [him] medical help." (*Id.* at 8.) Upon arrival at NCP, the LCJ correctional officers removed Wenhold's restraints. (*Id.* at 9-10.) A female correctional officer from NCP took receipt of Wenhold's property and said, "sorry, we don't allow cell phones and other [personal] property like this." (*Id.* at 10.) Wenhold asked the LCJ correctional officers to take his phone back to LCJ so that his family could pick it up from there. (*Id.* 10-11.) Wenhold verified his property and confirmed that the LCJ correctional officers would release his property to his family. (*Id.* at 11.) Wenhold contends, however, that from February 16 through March 23, 2023, "LCJ" lied to him about his property by telling him and his family that NCP had his property. (*Id.* at 13.) LCJ later discovered, however, that the property was "never logged . . . in

the log book." (*Id.*)  On March 24, 2023, Wenhold's aunt picked up his property from LCJ, and his mother noticed that Wenhold's cell phone was missing.  (*Id.*)

Wenhold's mother was later told that his cell phone was in the possession of the District Attorney, and it had been taken by the two "Detectives who brought him in." (*Id.* at 14.)  Wenhold avers that Detectives Heffelfinger and Regan violated due process by stealing his cell phone before the April 26, 2023 preliminary hearing, leaving Wenhold "with out any legal work/criminal police report and any kind of warrents [sic]." (*Id.*)  Wenhold further avers that Detectives Heffelfinger and Regan "are breaking laws about legal work and HIPPA medical laws" because Wenhold has "medical, dental, and legal/civil things on his phone." (*Id.* at 15.)  Wenhold also believes that Lt. Brooke helped the Detectives get his cell phone because she and Detective Heffelfinger are friends.  (*Id.*)  Wenhold asserts that "Lt. Brooke has been violating [people's] constitutional rights for years." (*Id.*)

Wenhold contends that the Defendants "are Lehigh County Officers and they are denying [his] 'Constitutional Rights' to due process, and medical rights to finally have oral surgery." (*Id.* at 17.)  He asserts that the Defendants are liable for "medical negligence." (*Id.* at 17-18.)  Wenhold avers that "the Defendants know [he has] many health problems and one (1) of them might be cancer." (*Id.* at 18.)  He asserts that "Lt. Brooke knows about [him] getting tested for cancer since [he] texted her reaching out in friendship." (*Id.* at 19.)  Wenhold has high blood pressure and avers that his blood pressure medication has been changed four times since he's been incarcerated because "staff" ran out of his medication.  (*Id.*)  Wenhold claims he has experienced "vary [sic] bad side effects" and difficulty breathing.  (*Id.*)  He also asserts that he has a left shoulder tear that is getting worse.  (*Id.* at 20.)

Wenhold contends that rather than be charged, Defendants "could have done a (PFA)" and given him a written warning.[5] (*Id.* at 20-21.) By choosing instead to file charges against him, Wenhold avers that Defendants abused their power by maliciously prosecuting him and denying him due process. (*Id.* at 20.) Wenhold avers that Detective Heffelfinger "is out to cause [him] fear" and this has resulted in Wenhold "attempt[ing] suicide many times over the years since 2018 after defendant Heffelfinger denied [him] due process" in an earlier criminal case. (*Id.* at 21.) Wenhold seeks $900,000 in monetary damages and the return of his cell phone that was "stolen" by the Defendants. (*Id.* at 22-23.)

A review of public records indicates that Wenhold is currently detained following his February 16, 2023 arrest on charges of stalking and harassment. *See Commonwealth v. Wenhold*, CP-39-CR-0002645-2023 (C.P. Lehigh). The arresting officer is listed as Lehigh County Detective Richard G. Heffelfinger. (*Id.*) Formal arraignment is scheduled for September 29, 2023 before Lehigh County Court of Common Pleas Judge Robert L. Steinberg. (*Id.*)

## II.   STANDARD OF REVIEW

The Court will grant Wenhold leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which

---

[5] Wenhold avers that he was given a verbal warning in the late summer of 2022. (Compl. at 21.)

[6] However, as Wenhold is currently incarcerated, he will be obligated to pay the full amount of the filing fee in installments as required by the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id*.

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). As Wenhold is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id*. However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

### III. DISCUSSION

As noted above, the Complaint reflects Wenhold's intention to raise civil rights claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*,

487 U.S. 42, 48 (1988).  In addition, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207)).

The Court understands Wenhold primarily to present claims based on violations of his Fourth Amendment rights.  However, Wenhold has not alleged a plausible basis for a § 1983 claim against any Defendant as explained below.

### A. Official Capacity Claims

To the extent Wenhold intended to pursue claims against the Defendants in their official capacities, these claims fail.  (Compl. at 1.)  Claims against municipal and county officials named in their official capacity are indistinguishable from claims against the entity that employs them, here Lehigh County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state an official capacity/municipal liability claim, a plaintiff must allege that the municipality's policies or customs caused the alleged constitutional violation.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made

when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). In addition, "[a] plaintiff must also allege that the policy or custom was the "proximate cause' of his injuries." *Id*. (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). "He may do so by demonstrating an 'affirmative link between the policy or custom and the particular constitutional violation he alleges." *Id*. A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

      To the extent Wenhold seeks damages from the named individual Defendants in their official capacities, he has failed to allege facts that support *Monell* liability. Wenhold makes no allegations regarding a specific custom or policy by which official capacity claims may be maintained, and he fails to allege that any policy or custom of the county caused the constitutional violations he describes in his Complaint. Accordingly, Wenhold has failed to articulate a plausible municipal liability claim, and the official capacity claims against the Defendants will be dismissed without prejudice on screening.

B.     **Fourth Amendment Claims**

Liberally construing his Complaint, the Court understands Wenhold to be raising Fourth Amendment claims for unlawful search of his property and malicious prosecution, arising out of his arrest and prosecution for stalking and harassment.[7]

1. **Search of Property**

Wenhold contends that once he arrived at LCJ, Detective Regan went through his personal property without consent and without a warrant. (Compl. at 3-4.) Generally, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place." *Maryland v. King*, 569 U.S. 435, 461-62 (2013) (citation and internal quotations omitted).

In order to properly analyze a claim asserting an illegal search under the Fourth Amendment, the circumstances under which the search arose are critical and must be adequately pled. *Cf. Tucker v. Petruzzi*, No. 17-1848, 2018 WL 3623766, at *5 (M.D. Pa. June 27, 2018), *report and recommendation adopted*, 2018 WL 3622772 (M.D. Pa. July 30, 2018) (noting that

---

[7] Wenhold does not appear to assert a claim for false arrest or false imprisonment. To the extent that he seeks to do so, however, he has not set forth a plausible claim for relief. To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). Wenhold has not alleged any facts that plausibly show probable cause was lacking when he was arrested by the Upper Saucon Police Department on February 16, 2023.

"the very nature of Fourth Amendment . . . unlawful entry litigation entails a consideration of the requirements of the Constitution in a specific factual context. . . . As such, these claims frequently are not subject to resolution . . . where [the court's] review is confined to an assessment of the well-pleaded facts in the complaint.") Here, Wenhold fails to state a plausible Fourth Amendment claim for an illegal search because he provides virtually no factual allegations describing the alleged search. Accordingly, this claim will be dismissed, and Wenhold will be granted leave to amend.[8]

### 2. Malicious Prosecution

Wenhold avers that Defendants "could have done a (PFA)" and given him a written warning rather than file charges against him. (*See* Compl. at 20-21.) By choosing to file charges

---

[8] Wenhold should remain cognizant that although searches generally require probable cause or, at least, reasonable suspicion, there are exceptions including one that permits an arresting officer to perform a search incident to an arrest. *See generally Birchfield v. North Dakota*, 579 U.S. 438, 455-461 (2016) (discussing the search-incident-to-arrest doctrine). "[W]hen a valid arrest has been made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it. As with the inventory search exception, searches of this type are justified by concerns for officer safety and will be valid whether or not an officer has probable cause to believe the evidence contains contraband." *United States v. Matthews*, 532 F. App'x 211, 224 (3d Cir. 2013); *see also United States v. Curran*, No. 13-259, 2014 WL 2042138, at *3-4 (M.D. Pa. May 19, 2014) (cursory search through defendant's bags at scene of arrest to ensure officer safety was lawful because bags had to be transported to police station), *aff'd*, 638 F. App'x 149 (3d Cir. 2016); *Illinois v. Lafayette,* 462 U.S. 640, 646-647 (1983) (upholding an inventory search of an arrestee's personal property at the stationhouse); *United States v. Edwards,* 415 U.S. 800, 802-804, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (upholding the confiscation of an arrestee's clothing as evidence at the stationhouse). Moreover, prisoners have a diminished right to be free from searches and seizures while incarcerated. *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").

10

against him, Wenhold contends that Defendants abused their power by maliciously prosecuting him.  (*Id.* at 20.)

A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).  "Probable cause exists if there is a fair probability that the person committed the crime at issue."  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (internal quotations omitted).  The United States Supreme Court recently clarified with respect to the second element that a plaintiff need not "show that the criminal prosecution ended with some affirmative indication of innocence" and "need only show that the criminal prosecution ended without a conviction."  *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022); *see also Coello v. DiLeo*, 43 F.4th 346, 354-55 (3d Cir. 2022) ("A § 1983 claim sounding in malicious prosecution accrues when 'the prosecution terminate[s] without a conviction.'").  Wenhold has not alleged facts to support an inference that Defendants lacked probable cause to initiate the charges against him.  In addition, Wenhold has not alleged that those charges terminated in his favor.  Indeed, the public record shows that his trial has not yet occurred.  Accordingly, Wenhold's malicious prosecution claim will also be dismissed without prejudice.[9]

---

[9] Under the doctrine of abstention developed in *Younger v. Harris*, 401 U.S. 37 (1971), there is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  The specific elements of *Younger* abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."  *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).  Because Wenhold's Fourth

C. **Return of Property**

In his request for relief, Wenhold seeks the return of his cell phone that he contends was "stolen" by the Defendants.  (*See* Compl. at 22-23.)  The Court construes this portion of the Complaint as alleging that Wenhold's procedural due process rights pursuant to the Fourteenth Amendment were violated when his cell phone was allegedly seized, but not returned.  In order to state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)).  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [s]he wants."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  Moreover, "if negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (*per curiam*).

In Pennsylvania, "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof."  Pa. R. Crim. P. 588(A).  This motion must be "filed in the

---

Amendment claims are undeveloped, the Court will not address whether *Younger* abstention necessitates that such claims be stayed pending resolution of the state judicial proceedings. However, if Wenhold files an amended complaint stating viable Fourth Amendment claims, the Court will consider the doctrine at that time, if applicable.

12

Court of Common Pleas for the judicial district in which the property was seized." *See id.*  Here, Wenhold does not indicate in the Complaint that he filed a motion for return of his property in state court.  Furthermore, he does not challenge the adequacy of Pennsylvania's procedure for the return of property.  Consequently, Wenhold has failed to state a claim for relief pursuant to the Fourteenth Amendment's due process clause.  *See Gulley v. Haymaker*, No. 06-131J, 2009 WL 763549, at *12 (W.D. Pa. Mar. 23, 2009).  This claim, therefore, will be dismissed without prejudice to Wenhold's right to pursue the return of his property in state court.  *See Scott v. Tonkin*, No. 20-2067, 2020 WL 6940828, at *4 (M.D. Pa. Nov. 25, 2020).

### D.  Medical Deliberate Indifference

To the extent that Wenhold asserts claims based on the failure to provide medical treatment with respect to any alleged injuries he suffered during his transfer to NCP or with respect to any of his other alleged ailments,[10] he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[11]  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

---

[10]  Wenhold avers that he "freaked-out" and was "ban[g]ing his head" during transfer, but "LCJ staff" didn't render any medical assistance.  (*See* Compl. at 7.)  Wenhold also asserts that the Defendants are liable for "medical negligence" in connection with his alleged need for oral surgery, possible cancer, high blood pressure, and left shoulder tear.  (*Id.* at 17-20.)

[11]  As it appears that Wenhold was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

13

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citations and quotations omitted). Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id; see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Wenhold's claims fail as pled because he does not allege how any of the named Defendants were personally involved in the alleged violation of his rights. As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal

14

involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff). There simply are not enough facts in the Complaint to support a plausible inference that any of the named Defendants were aware that Wenhold required attention for a serious medical need and that they acted intentionally to refuse to provide medical treatment, delayed treatment, or personally prevented Wenhold from receiving needed or recommended medical treatment. Accordingly, Wenhold has not stated a plausible deliberate indifference for the failure to provide medical treatment. However, because the Court cannot say at this time that Wenhold is incapable of curing these defects, the claim will be dismissed without prejudice, and he will be given an opportunity to reassert the claim in an attempt to cure the defects.

### E. Transfer to a Different Jail

To the extent that Wenhold asserts claims based on his transfer to NCP, it is well-settled that prisoners have no inherent constitutional right to placement in any particular institution, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, Civ. A. No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same). Because White has no right to be transferred to another institution, that portion of his claim for relief is not plausible and will be dismissed with prejudice.

### F. Claims Under the Health Insurance Portability and Accountability Act

To the extent Wenhold seeks to bring claims pursuant to the Health Insurance Portability and Accountability Act **("HIPAA")**, that statute does not provide for a federal private right of action. *See Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011); *Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks,* 470 F.3d 569 (5th Cir. 2006); *Altavilla v. Geisinger Wyoming Valley Med. Ctr.*, Civ. A. No. 17-1704, 2018 WL 1630961, at *2 (M.D. Pa. Mar. 12, 2018), *report and recommendation adopted,* 2018 WL 1629870 (M.D. Pa. Apr. 4, 2018) ("'The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens.'" (quoting *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469 (D.N.J. 2013)). Accordingly, all claims asserting violations of HIPAA are dismissed with prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Wenhold leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Wenhold's claims based on his transfer to NCP and any claims under HIPAA will be dismissed with prejudice. Wenhold's claim seeking the return of his cell phone will be dismissed without prejudice to his right to pursue the return of his property in state court. Wenhold is granted leave to file an amended complaint with regard to his remaining claims if he can cure the defects the

Court has identified.[12]  An appropriate Order follows, which provides further instruction as to amendment.

<strong>BY THE COURT:</strong>

<u>/s/ Jeffrey L. Schmehl</u>
**JEFFREY L. SCHMEHL, J.**

---

[12]  Having reviewed all of Wenhold's allegations, the Court cannot discern any other factual or legal basis for his claims.  Although Wenhold averred that Detective Heffelfinger "has been denying [him] his constitutional rights to due process" for years (*id.* at 3, 21), Wenhold has provided no facts to support this assertion, which is insufficient to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 678; *see also Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (explaining that "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).