## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDAN DEAN WENHOLD,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-1513** |
| | : | |
| **LT. BROOKE LYNN ALBERT** | : | |
| **LOANE GAGLIONE,** *et al.* | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SCHMEHL, J. /s/**                                                      **FEBRUARY  26, 2024**

Currently before the Court is an Amended Complaint filed by Plaintiff Jordan Dean
Wenhold, a pretrial detainee currently incarcerated at Berks County Jail, against Defendants Lt.
Brooke Lynne Albert Loane Gaglione ("Gaglione"), Detective Richard G. Heffelfinger
("Heffelfinger"), and Detective Reagan ("Reagan").  (Am. Compl. (ECF No. 10).)[1]  Wenhold
raises constitutional claims pursuant to 42 U.S.C. § 1983, as a result of his February 16, 2023
arrest and seizure of his cell phone.  Since Wenhold's Amended Complaint is essentially
identical to his initial Complaint, the Court will dismiss the Amended Complaint for failure to
state a claim for the same reasons it dismissed Wenhold's initial Complaint.

### I.       FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]

In an October 30, 2023 Memorandum and Order, the Court granted Wenhold leave to
proceed *in forma pauperis* and dismissed his Complaint in its entirety pursuant to 28 U.S.C. §

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

[2] The factual allegations are taken from Wenhold's Complaint, his Amended Complaint, and
publicly available records of which this Court takes judicial notice.  *See Buck v. Hampton Twp.
Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in
determining whether a pleading has stated a claim).

1915(e)(2)(B)(ii) for failure to state a claim.  (*See* ECF Nos. 7 & 8.)  Any claims that Wenhold sought to assert with respect to his transfer to Northampton County Prison ("NCP") were dismissed with prejudice because prisoners have no inherent constitutional right to placement in any particular institution.  *Wenhold v. Gaglione*, No. 23-1513, 2023 WL 7129951, at *7 (E.D. Pa. Oct. 30, 2023).  Also, to the extent that Wenhold brought claims pursuant to the Health Insurance Portability and Accountability Act (**"**HIPAA"), those claims were dismissed with prejudice because HIPAA does not provide for a federal private right of action.  (*Id.*)  The dismissal of Wenhold's remaining claims was without prejudice to him filing an amended complaint in the event he could cure the defects in his claims.  (*Id.* at 8.)  Wenhold filed an amended complaint, which is currently pending before the Court.  As noted above, the allegations in the Amended Complaint are essentially identical to Wenhold's initial Complaint. However, the Court will recount the operative facts here.

Wenhold alleges that he was "denied due process" on February 16, 2023 when he was arrested by the Upper Saucon Police Department and taken to Lehigh County Jail ("LCJ").[3] (Am. Compl. at 4.)  When Wenhold arrived at LCJ, he was met by Lehigh County Detectives Heffelfinger and Reagan.  (*Id.* at 5-8.)  Heffelfinger introduced himself and allegedly told Wenhold that "every time you contact [Lt. Gaglione], I will be filing charges on you for stalking and harassment."[4]  (*Id.* at 8.)  Wenhold contends that by choosing to file criminal charges instead

---

[3] Wenhold alleges that he was arrested for stalking and harassing Gaglione.  (Am. Compl. at 21.) A review of public records indicates that Wenhold is still in custody following his February 16, 2023 arrest on charges of stalking and harassment.[3]  *See Commonwealth v. Wenhold*, CP-39-CR-0002645-2023 (C.P. Lehigh).  The arresting officer is listed as Heffelfinger.  (*Id.*)  Wenhold was formally arraigned on September 29, 2023 before Lehigh County Court of Common Pleas Judge Robert L. Steinberg, and a status conference has been scheduled for March 27, 2024.  (*Id.*)

[4] It appears from the Amended Complaint that another officer suggested a PFA, but Heffelfinger decided to file charges instead.  (Am. Compl. at 7-8.)

2

of a Protection From Abuse ("PFA"), Heffelfinger abused his power, and it was a "CLEAR SIGN OF A PERSON WITH ABUSE OF AUTHORITY ISSUES."  (*Id.*)  Wenhold further contends that while Heffelfinger was threatening him with charges, Reagan went through his personal property without consent and without a warrant.  (*Id.* at 5-8, 10.)

Following his arraignment, Wenhold was temporarily placed in a holding cell at LCJ where he observed LCJ staff place his property into a "big clear bag."  (*Id.* at 10.)  Wenhold asserts that his property was not "inventoryed [sic] . . . which is against LCJ policy and customs."  (*Id.* at 11.)  He asserts that "by breaking policy," LCJ "made themselfs [sic] liable for damages/lost/or stolen property."  (*Id.*)  Wenhold was subsequently informed by Sergeant Kowal and other LCJ staff that that he was being transferred to NCP.  (*Id.*)  Wenhold avers that he did not want to be transferred because "it being TOO painful [sic] and harder for him to fight his cases."  (*Id.*)  After Wenhold was placed in a vehicle for transfer to NCP, he allegedly became anxious and started "banging his head . . . in front of LCJ staff," but the "staff did nothing to get help."[5]  (*Id.*)  He continued to bang his head during transfer.  (*Id.*)  Wenhold avers that following his transfer to NCP, he was evaluated by medical and although his head wounds were documented, "medical" did not treat "the dry blood on his head."  (*Id.* at 12.)

At NCP, a female correctional officer took receipt of Wenhold's property and said, "sorry, we don't allow cell phones and wallets."  (*Id.* at 12.)  Wenhold then asked the LCJ correctional officers to take his phone back to LCJ so that his family could pick it up from there.  (*Id.*)  Wenhold verified that the officers were in possession of his cell phone before they left to return back to LCJ, and he alleges that they told him that they would release his property to his

---

[5] Wenhold avers that he was transported to NCP by LCJ Correctional Officers Woodward and Stickle.  (Am. Compl. at 11-12.)  Wenhold does not name either of these individuals as Defendants.

family.  (*Id.* at 12-13.)  Wenhold also avers that on February 16, 2023, Gaglione was the "shift

commander" at LCJ and "had the power to open sealed property bag and remove [his] cell

phone."  (*Id.* at 13.)  He contends that Gaglione "should not have been [at LCJ that day] . . . as

shift commander, DO [sic] TO CONFLICT of Intrest [sic]" because she was the alleged victim.

(*Id.* at 13.)

Wenhold contends that from February 16 through March 23, 2023, his property was

missing.  (*Id.*)  In particular, he alleges that Heffelfinger and Reagan took possession of his cell

phone on February 23, 2023, took it to their office, and "stored it in a secure gun room as

evidence."  (*Id.* at 13-14; ECF No. 11.)  Wenhold did not receive a "receipt or a warrant or any

kind of paper work" from either of them.  (*Id.* at 14.)  Wenhold also alleges that although he did

receive a copy of a police report and some discovery materials, he "never received any legal

mail/arrest warrants, warrants for cellphone or any mail/paperwork" for his criminal case.  (*Id.*)

Presumably, based on these assertions, Wenhold alleges that Defendants "kept . . . legal work"

from him, and "violated his First Amendment right to legal mail."  (*Id.* at 10.)

Attached to his Amended Complaint is a letter dated March 9, 2023 to "Warden Kyle R."

(*Id.* at 17.)  In the letter, Wenhold inquires about "his missing property"[6] that was last seen at

NCP when LCJ transport officers took it with them to "release it to [his] family like they said

they were going to do."  (*Id.*)  Wenhold also accuses Gaglione of having intimate relations with

"both staff & inmates" and that is "how [he] was able to get her contact/personnel [sic] info."

---

[6] Wenhold identified the following items as his missing property:  a series 7 iPhone plus, a
"SNAP-ON" 100th Annivsary [sic] wallet," a red pen, a black padded clip board with a 2019
criminal police report, misconduct reports dated March 28, 2019, a notebook, and a set of keys
with a red Honda key chain.  (Am. Compl. at 18.)

(*Id.*)  He alleges that he met an inmate at "SCI-Ben, who stated he was sleeping with her in & out of LCJ & sneaking out her window as her . . . husban [sic] was coming home."  (*Id.* at 17-18.)

Based on the foregoing allegations, Wenhold has sued the Defendants in their individual and official capacities.  (*Id.* at 2-3, 5.)  He alleges that his rights under the First, Fourth, Eighth, and Fourteenth Amendments have been violated.  (*Id.* at 3.)  More specifically, Wenhold asserts that his "First Amendment rights to 'privileged mail,' 'legal mail,' or 'special mail'" have been violated because he has not received any "legal papers on arrest warrants and on [his] cell phone."  (*Id.*)  Wenhold avers his "Fourth Amendment right to privacy" was violated because Defendants searched his property at the jail before he was processed.  (*Id.*)  Wenhold further alleges that he was subjected to an unreasonable search and seizure, denied due process, falsely imprisoned, and threatened by Heffelfinger with criminal charges, all of which caused him to fear for his life and safety.  (*Id.* at 7, 21.)  Wenhold also asserts that Gaglione "stole [his] cell phone" and arranged for Heffelfinger and Reagan "to steal it and take it to their office."  (*Id.* at 11, 21, ECF No. 11.)  He further avers that in her role as shift commander, Gaglione had "the power to have [his] property never logged and given to the DA's offices."  (*Id.* at 21.)  Finally, Wenhold asserts that as a result of his transfer to NCP, he suffered an "anxiety attack and banged his head until he was bleeding thus therefore, medical negligences [sic]."  (*Id.*)  He contends that did not receive any medical treatment to "his somewhat bleeding head" at NCP."  (*Id.*)

Wenhold requests that criminal charges be filed against Heffelfinger and Gaglione as well as "some kind of court order to keep Heffelfinger away from [him]." [7]  (*Id.* at 19-21.)

---

[7] To the extent Wenhold seeks to have criminal charges filed, that is not relief the Court can grant to him.  "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, 368 F. App'x

Wenhold also seeks compensatory and punitive damages, and the return of his cell phone.  (*Id.* at 21.)

## II.    STANDARD OF REVIEW

Because Wenhold is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

---

613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties"); *Sanders v. Downs*, No. 08-1560, 2010 WL 817475 at *5 (M.D. Pa. Mar.9, 2010) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts at his home, since "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation") (quoting *Fuchs v. Mercer Cnty.,* 260 F. App'x 472, 475 (3d Cir. 2008) (alterations in the original); *Nedab v. Lencer*, No. 06-54, 2007 WL 853595 at *3 (W.D. Pa. Mar. 20, 2007) (plaintiff lacked standing to assert constitutional violation premised on state police officer's alleged failure to investigate and file criminal charges related to assault against plaintiff).  Also, to the extent Wenhold seeks injunctive relief in the form of a "stay-away" order, the Court knows of no basis under which that type of relief can granted in a civil rights action.

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).   Conclusory allegations do not

suffice.  *Iqbal*, 556 U.S. at 678.  As Wenhold is proceeding *pro se*, the Court construes his

allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

As noted above, the Complaint reflects Wenhold's intention to raise civil rights claims

pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against

state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation

of a right secured by the Constitution and laws of the United States, and must show that the

alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*,

487 U.S. 42, 48 (1988).  In addition, "[a] defendant in a civil rights action must have personal

involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207

(3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement

requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'"

(quoting *Rode*, 845 F.2d at 1207)).  The majority of Wenhold's claims fail for the same reasons

his identical claims in the initial Complaint failed.  *Wenhold*, 2023 WL 7129951, at **3-7.

### A.   Official Capacity Claims

Claims against municipal and county officials named in their official capacity are

indistinguishable from claims against the entity that employs them, here Lehigh County.  *See*

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally

represent only another way of pleading an action against an entity of which an officer is an

agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n

official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."
*Id.*

To state an official capacity/municipal liability claim, a plaintiff must allege that the municipality's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). In addition, "[a] plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). "He may do so by demonstrating an 'affirmative link between the policy or custom and the particular constitutional violation he alleges." *Id.* A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

In the Amended Complaint, Wenhold has again indicated that he is suing the Defendants in their individual and official capacities, and he has added the notation "municipal liability

claim" to his pleading.  (Am. Compl. at 2-3, 5-6.)  The Court took note in the Memorandum dismissing Wenhold's original Complaint that he failed to allege facts that support *Monell* liability.  *Wenhold*, 2023 WL 7129951, at *4.  Once more, Wenhold makes no allegations regarding a specific custom or policy by which official capacity claims may be maintained, and he fails to allege that any policy or custom of the county caused the constitutional violations he describes in his Amended Complaint.  Accordingly, Wenhold has again failed to articulate a plausible municipal liability claim, and the official capacity claims against the Defendants will be dismissed.

> **B.      Fourth Amendment Claims**

Liberally construing his Amended Complaint, the Court understands Wenhold to be raising Fourth Amendment claims for unlawful search of his property, false imprisonment, and malicious prosecution, arising out of his arrest for the stalking and harassment of Gaglione.

> **1.    Search of Property**

Generally, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place."  *Maryland v. King*, 569 U.S. 435, 461-62 (2013) (citation and internal quotations omitted).  As the Court noted in its prior Memorandum, in order to properly analyze a claim asserting an illegal search under the Fourth Amendment, the circumstances under which the search arose are critical and must be adequately pled.  *See Wenhold*, 2023 WL 7129951, at *5 (citations omitted).

As with the initial Complaint, Wenhold provides virtually no factual allegations describing the circumstances under which the search arose.  Once again, Wenhold's sole allegation is that when he arrived at LCJ, Detective Reagan went through his personal property without consent and without a warrant before he was processed.  (*See* Am. Compl. at 3, 5-8, 10; Compl. at 3-4.)  This conclusory assertion is insufficient to establish a plausible claim.  Despite the Court's prior admonition that the circumstances under which a search arose are critical and must be adequately pled, Wenhold provides no additional factual allegations describing those circumstances in his Amended Complaint.

As explained to Wenhold in the Court's prior Memorandum, although searches generally require probable cause or, at least, reasonable suspicion, there are exceptions including one that permits an arresting officer to perform a search incident to an arrest.  *Wenhold*, 2023 WL 7129951, at *5 n.8 (citing *Birchfield v. North Dakota*, 579 U.S. 438, 455-461 (2016) (discussing the search-incident-to-arrest doctrine).)  "[W]hen a valid arrest has been made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it.  As with the inventory search exception, searches of this type are justified by concerns for officer safety and will be valid whether or not an officer has probable cause to believe the evidence contains contraband."  *United States v. Matthews*, 532 F. App'x 211, 224 (3d Cir. 2013); *see also United States v. Curran*, No. 13-259, 2014 WL 2042138, at *3-4 (M.D. Pa. May 19, 2014) (cursory search through defendant's bags at scene of arrest to ensure officer safety was lawful because bags had to be transported to police station), *aff'd*, 638 F. App'x 149 (3d Cir. 2016); *Illinois v. Lafayette,* 462 U.S. 640, 646-647 (1983) (upholding an inventory search of an arrestee's personal property at the

stationhouse); *United States v. Edwards,* 415 U.S. 800, 802-804, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (upholding the confiscation of an arrestee's clothing as evidence at the stationhouse). Moreover, prisoners have a diminished right to be free from searches and seizures while incarcerated.  *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").  As with his initial Complaint, Wenhold fails to state a plausible Fourth Amendment claim for an illegal search, and this claim will be dismissed.

### 2. False Imprisonment

Wenhold contends that he was "falsely imprisoned" as a result of a "conflict of intrest [sic] with defendant Heffelfinger who's been under investigation by the Attorney General's office and Josh Shapiro."  (*See* Am. Compl. at 21.)  As noted in the Court's prior Memorandum, in order to state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause.  *Wenhold*, 2023 WL 7129951, at *4 n.7 (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).)  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Orsatti*, 71 F.3d at 483.  "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'"  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). As with his initial Complaint, Wenhold has not alleged any facts that plausibly show probable

cause was lacking when he was arrested by the Upper Saucon Police Department on February 16, 2023.  Accordingly, this claim must be dismissed.

### 3.  Malicious Prosecution

Wenhold once again contends that by choosing to file charges instead of a PFA, Heffelfinger abused his power, and it was a "CLEAR SIGN OF A PERSON WITH ABUSE OF AUTHORITY ISSUES."  (*See* Am. Compl. at 8; Compl. at 20-21.)  This claim is undeveloped and conclusory.  A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).  "Probable cause exists if there is a fair probability that the person committed the crime at issue."  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (internal quotations omitted).  The United States Supreme Court recently clarified with respect to the second element that a plaintiff need not "show that the criminal prosecution ended with some affirmative indication of innocence" and "need only show that the criminal prosecution ended without a conviction."  *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022); *see also Coello v. DiLeo*, 43 F.4th 346, 354-55 (3d Cir. 2022) ("A § 1983 claim sounding in malicious prosecution accrues when 'the prosecution terminate[s] without a conviction.'").

As noted above, Wenhold has not alleged facts to support an inference that Defendants lacked probable cause to initiate the charges against him.  In addition, Wenhold has not alleged

that those charges terminated in his favor. Indeed, the public record shows that his trial has not yet occurred. Accordingly, Wenhold's malicious prosecution claim will be dismissed.[8]

### C.     First Amendment Claim

Wenhold alleges that although he received a copy of the police report and discovery materials on August 8, 2023 and November 17, 2023, respectively, he "never received any legal mail/arrest warrants, warrants for cellphone or any mail/paperwork for this current criminal case." (*See* Am. Compl. at 14.) Based on these assertions, Wenhold contends that Defendants "kept . . . legal work" from him, and "violated his First Amendment right to legal mail." (*Id.* at 10.)

Prisoners have protected First Amendment interests in both sending and receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Turner v. Safley*, 482 U.S. 78, (1987). However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85). To state a plausible interference with legal mail claim, a plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). "[A] single instance is usually not enough." *Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir.

---

[8]  Under the doctrine of abstention developed in *Younger v. Harris*, 401 U.S. 37 (1971), there is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The specific elements of *Younger* abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Because Wenhold's Fourth Amendment claims remain undeveloped, the Court will not address whether *Younger* abstention necessitates that such claims be stayed pending resolution of the state judicial proceedings.

2020) (*per curiam*).  Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails.  *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006).  Nonetheless, courts have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation.  *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation.").

While Wenhold generally alleges that his "First Amendment right to legal mail" was violated (*see* Am. Compl. at 10), he fails to set forth specific factual averments describing how any named Defendant was personally involved in the alleged interference, nor does Wenhold assert that there was a pattern and practice of legal mail being opened outside of his presence. Indeed, Wenhold appears to assert the alleged failure to provide him with "legal work," that he specifically identifies as an arrest/search warrant, equates to an interference with legal mail. There is no factual support for Wenhold's conclusory statement that his "right to legal mail" was violated.  Without at least a modicum of factual specificity on when and how his legal mail was allegedly interfered with, the Court must conclude that Wenhold has failed to state a plausible claim of interference with legal mail under the First Amendment.  *See Taylor*, 196 F. App'x at 128 (stating that the inmate must allege the "personal involvement on the part of the Defendants in the alleged pattern and practice of opening his mail"); *see also Drake v. Muniak*, No. 13-3868, 2017 WL 1102628, at *3 (D.N.J. Mar. 24, 2017) (finding First Amendment claim did not satisfy the *Iqbal/Twombly* facial plausibility standard where plaintiff alleged only that there was a pattern or practice of reading or inspecting prisoners' legal materials outside of their presence). Accordingly, Wenhold's First Amendment interference with legal mail claim will be dismissed.

14

D.      **Return of Property**

In his request for relief, Wenhold seeks the return of his cell phone that was allegedly "stolen" by the Defendants.  (*See* Am. Compl. at 11, 13-14, 21; Compl. at 22-23.)  As noted in the Court's prior Memorandum, the Court construes these allegations as asserting that Wenhold's procedural due process rights pursuant to the Fourteenth Amendment were violated when his cell phone was allegedly seized, but not returned.  *Wenhold*, 2023 WL 7129951, at *6.

In order to state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)).  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  Moreover, "if negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (*per curiam*).

In Pennsylvania, "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof."  Pa. R. Crim. P. 588(A).  This motion must be "filed in the Court of Common Pleas for the judicial district in which the property was seized."  *See id.*  Here, Wenhold does not indicate in the Amended Complaint that he filed a motion for return of his

property in state court.  Furthermore, he does not challenge the adequacy of Pennsylvania's

procedure for the return of property.  Consequently, Wenhold has failed to state a claim for relief

pursuant to the Fourteenth Amendment's due process clause.  *See Gulley v. Haymaker*, No. 06-

131J, 2009 WL 763549, at *12 (W.D. Pa. Mar. 23, 2009).  This claim, once again, will be

dismissed without prejudice to Wenhold's right to pursue the return of his property in state court.

*See Scott v. Tonkin*, No. 20-2067, 2020 WL 6940828, at *4 (M.D. Pa. Nov. 25, 2020).

### E.    Medical Deliberate Indifference

To the extent that Wenhold asserts claims based on the failure to provide medical

treatment with respect to any alleged injuries he suffered during his transfer to NCP,[9] he must

allege facts indicating that prison officials were deliberately indifferent to his serious medical

needs.[10]  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately

indifferent "unless the official knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Deliberate indifference is properly alleged "where the prison official (1) knows of a

prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary

---

[9] Wenhold avers that he was anxious during transfer and started "banging his head . . . in front of LCJ staff," but the "staff did nothing to get help."  (*See* Am. Compl. at 11.)  Once he arrived at NCP, he was evaluated by medical and although his head wounds were documented, he alleges that "the dry blood on his head" was not treated.  (*Id.* at 12.)

[10] As it appears that Wenhold was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citations and quotations omitted). Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id; see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Wenhold's claims fail as pled because he does not allege how any of the named Defendants were personally involved in the alleged violation of his rights. As noted above, and in the Court's prior Memorandum, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use

of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff). There simply are not enough facts in the Amended Complaint to support a plausible inference that any of the named Defendants were aware that Wenhold required attention for a serious medical need and that they acted intentionally to refuse to provide medical treatment, delayed treatment, or personally prevented Wenhold from receiving needed or recommended medical treatment. Indeed, Wenhold avers that he was evaluated by "medical" once he arrived at NCP. (Am. Compl. at 12.) Accordingly, Wenhold has not stated a plausible deliberate indifference for the failure to provide medical treatment, and this claim will be dismissed.

## F.      Transfer to a Different Jail

To the extent that Wenhold reasserts claims based on his transfer to NCP, it is well-settled that prisoners have no inherent constitutional right to placement in any particular institution, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, Civ. A. No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same). Because Wenhold has no right to be transferred to another institution, that portion of his claim for relief is not plausible and will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss his Amended Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court concludes that further attempts at amendment would be futile, especially since Wenhold's Amended Complaint was essentially identical to his initial Complaint. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*,

944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant

"already had two chances to tell his story").  Accordingly, this case will be dismissed with

prejudice, with the exception of Wenhold's malicious prosecution claim, which has not yet

accrued,[11] and which will therefore be dismissed without prejudice to Wenhold filing a new case

only in the event the charges in question terminate in his favor.  An Order follows, which

dismisses this case.

**BY THE COURT:**

                                        **/s/ Jeffrey L. Schmehl**
                                        **JEFFREY L. SCHMEHL, J.**

---

[11] A malicious prosecution claim brought under the Fourth Amendment accrues once the underlying criminal proceedings have resolved in the plaintiff's favor because that is when the cause of action is complete.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989).